**John F. Rooney, V, Esquire**
PA ID # 310289
2401 Pennsylvania Avenue – Suite 1C-41
Philadelphia, PA 19130
(T) 215-569-3909
(F) 215-569-3829                                    Attorney for Plaintiff

## IN THE UNITED STATES DISTRCIT COURT
## FOR THE EASTERN DISTRCT OF PENNSYLVANIA

| | |
|---|---|
| **GLYCOMAR LTD.** | : |
| European Center for | : CIVIL ACTION |
| Marine Biotechnology | : |
| Dunstaffnage Marine Laboratory | : No.: |
| Dunbeg, Oban, | : |
| Argyll PA37 1QA, UK | : |
| **PLAINTIFF** | : |
| | : |
| | : |
| vs. | : |
| | : |
| **TECHNOMARK GROUP USA, LLC.** | : |
| 2215 Whitley Drive | : |
| Durham, NC 27707 | : **PLAINTIFF'S COMPLAINT** |
| and | : **BREACH OF CONTRACT** |
| **TECHNOMARK** | : |
| **LIFE SCIENCES, LTD.** | : |
| 139 East Lancaster Avenue | : |
| Suite 33 | : |
| Wayne, PA 19087 | : |
| | : |
| | : |
| | : |
| **DEFENDANTS** | : |

## COMPLAINT

Plaintiff GlycoMar Limited, a United Kingdom Limited Company (hereinafter "GlycoMar" or "Plaintiff"), hereby states by way of Complaint against Defendants, Technomark Group USA, LLC & Technomark Life Sciences, LTD (hereinafter "Techomark" and/or "Defendant") (Plaintiff and Defendant collectively referred to as "Parties") as follows:

## PARTIES

1.      Plaintiff is a United Kingdom Limited Company with its principal office at European Center for Marine Biotechnology, Dunstaffnage Marine Laboratory, Dunbeg, Oban, Argyll PA37 1QA, UK.

2.      Defendant Technomark Group USA, LLC is a Limited Liability Company organized under the laws of the State of North Carolina with its principal place of business at 2215 Whitley Drive, Durham, NC 27707.

3.      Defendant Technomark Life Sciences, Ltd. (hereinafter "Technomark LS") is a United Kingdom Limited Company with its registered address at 68 Derby Street, Manchester, Greater Manchester, United Kingdom, M8 8AT. Technomark LS maintains its principal place of business for United States operations at 139 E. Lancaster Avenue, Suite 33, Wayne, PA 19087.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the citizenship of the parties is diverse and the amounts in controversy exceed $75,000.00.

5.      Venue is proper in the Eastern District of Pennsylvania in pursuant to 28 U.S.C. 1391 as defendants, or their agents, or certain of them, resie of may be found in the Eastern District and the Defendants maintain substantial contacts and transact business in the Eastern District.

## FACTUAL BACKGROUND

6.      Plaintiff is a biotechnology company with a focus on pharmaceutical drug discovery and development.

7.      Plaintiff often seeks out, and partners with, investors for the co-development of consumer health care, personal care and pharmaceutical products.

8.      Defendant is a life science investment group with a focus on product co-investment, licensing and partnering. In exchange for its investment and services, Defendant seeks a return on investment through equity stakes, royalty payments, milestone payments and various fee structures.

9.      On December 5, 2013 Parties entered into a Co-Development Agreement (hereinafter the "Agreement"), for the purpose of bringing to market a psoriasis treatment drug which Plaintiff discovered and was developing. A true and correct copy of the Agreement is attached hereto as **"EXHIBIT A."**

10.     Pursuant to the Agreement Plaintiff was to pay Defendant three hundred and ninety thousand British Pounds to provide a completed preclinical program for the Plaintiff's psoriasis drug candidate. The tasks, roles and responsibilities pertaining to the preclinical program are fully defined in Exhibit C of the Agreement. A true and correct copy of Exhibit C of the Agreement is attached hereto as **"EXHIBIT B."**

11.     Pursuant to the Agreement Defendant was solely responsible for providing a complete preclinical program, which was defined in the Agreement. *See,* **"EXHIBIT A."**

12.     The preclinical program was to be performed by a third party Contract Research Organization ("CRO"), which was selected by Defendant.

13.     Pursuant to the Agreement Defendant was to be responsible for the timeline, budget, management and completion of all tasks and activities in connection with the preclinical program.

14.     It was the sole responsibility of Defendant to work with the CRO and to pay the CRO for any amounts due an owing to for the conduct of activities in order to ensure that the goals of the preclinical program were met. *See*, ¶¶ **2(c) & 3(c) of** **"EXHIBIT A."**

15.     In exchange for providing a preclinical program for Defendant's drug, Plaintiff was to pay Defendant a series of "milestone payments." Milestone payments were to be made by Plaintiff to Defendant upon the completion stipulated performance milestones. The performance milestones and milestone payment structure are more fully defined in Exhibit D of the Agreement. A true and correct copy of Exhibit D of the Agreement is attached hereto as **"EXHIBIT C."**

16.     All milestone payments were to be made in British Pounds.

17.     As described in Exhibit D of the Agreement (**"EXHIBIT C"** of this Complaint) Plaintiff was to make milestone payments to Defendant as follows: 1.) £17,000.00 upon the signing of a terms sheet, 2.) £200,000.00 due upon the signature of a definitive agreement ("**EXHIBIT A" of this Complaint),** 3.) £ 100,000.00 upon the completion of rodent work and submission of raw data and 4. ) £82,000.00 upon completion of minipig work and submission of raw data. *See,* **"EXHIBIT C."**

18.     In addition to the milestone payments that were to be made in currency, the Agreement provided for the issuance of ordinary shares of GlycoMar, LTD (Plaintiff) to Technomark UK (Defendant), upon completion of the Preclinical Program. The shares

were to be issued at a value of two hundred sixty-six thousand (£266,000.00) British

Pounds, at a price of six (£6) British Pounds per share (i.e. 44,334 ordinary shares).

19.     In December of 2013, Plaintiff paid to Defendant the first two milestone

payments, totaling £ 217,000.00.

20.     Prior to the signing of the Agreement, Defendant selected two companies

to implement, manage and complete the preclinical program. Wuxi, a Chinese CRO was

selected by Defendant to conduct the preclinical program. Clintox Bioservices Limited

(hereinafter "Clintox"), an Indian CRO, was selected by Defendant to manage the

preclinical program.  *See,* ¶ 1 **"EXHIBIT A."**

21.     Pursuant to the agreement Defendant was ultimately, and solely

responsible, for the delivery of the completed preclinical program.

22.     Following the signing of the Agreement and payment of the first two

milestone payments, Plaintiff provided to Defendant all necessary materials needed to

begin the preclinical program.

23.     Several months had passed following the signing of the Agreement and no

progress had been made towards the completion of the preclinical program. In fact,

nothing had been done, whatsoever.

24.     By September of 2014 it was apparent that Defendant could not and/or

would not be able to deliver the preclinical program.

25.     To date, despite receiving milestone payments of £ 217,000.00, despite

Plaintiff fulfilling all of its contractual obligations, and despite Defendant's contractual

obligations to deliver a preclinical program, Defendant has not delivered any part of the

preclinical program provided for in the Agreement.

26.     On September 4, 2014 Defendant's Board of Directors agreed to seek mutual termination the Agreement with Defendant.

27.     Following Plaintiff's decision to terminate the Agreement, Parties entered into negotiations for a mutually acceptable termination agreement, providing for a repayment of monies to Plaintiff.

28.     For several months Parties attempted to negotiate mutually agreeable termination and repayment terms.

29.     On March 12, 2015, Defendant sent a letter to Plaintiff purporting to memorialize mutual termination and repayment negotiations.  Pursuant to the letter, Defendant proposed to pay one hundred fifty thousand ($150,000.00) dollars in exchange for termination of the Agreement and release of claims, as follows: "1.) For Defendant to refund 150K back to Plaintiff with the following payment schedule: a.)Technomark shall pay 37K USD immediately from its own monies back to GlycoMar; b.) The CROs shall refund a total of 63K USD back to GlycoMar no later than the end of April 2015; and c.) Technomark shall pay a minimum monthly payment each month, starting in March 2015, until August 2015, for a total of 65K USD…" A true and correct copy of the March 12, 2015 letter is attached hereto as "**EXHIBIT D.**"

30.     The letter further stated, "… execute this letter as a sign of agreeing to the proposed terms." *See*, "**EXHIBIT D.**"  Neither party signed the letter.

31.     Plaintiff never agreed to the terms proposed by Defendant, in the March 12, 2015 letter.

32.     Though Parties never reached agreeable termination and repayment terms, Defendant sent four (4) payments to Plaintiff, totaling seventy seven thousand ($77,000.00) dollars.

33.     Despite demands, Plaintiff has not received any payment from Defendant, since July 2015.

34.     To date Plaintiff has not received delivery of the preclinical program, nor has Plaintiff received a full refund of the monies paid for the preclinical program.

35.     As a consequence of Defendant's failure to deliver the bargained for preclinical program, Plaintiff has been further harmed by having to incur other substantial costs that it would not have had to incur which include, but are not limited to, those costs associated with the filing of this litigation and additional fees incurred in connection with this effort.

## FIRST COUNT
### *(Breach of Contract)*

36.     The averments contained in paragraphs 1 through 35 are incorporated by reference as if set forth at length herein.

37.     Defendant and Plaintiff entered into the Agreement whereby Defendant was obligated to deliver a completed preclinical program for Defendant's Psoriasis drug candidate in exchange for Plaintiff's promise to make payments in accordance with the terms and conditions of the Agreement.

38.     Plaintiff performed all of its obligations under its contractual agreement with Defendant, but Defendant failed to deliver the bargained for preclinical program.

39.     Defendant has breached material terms and conditions of the Agreement by among other things, failing to deliver any aspect of the preclinical program, for which Plaintiff paid Defendant.

40.     As a result of Defendant's wrongful actions and breach of contract, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demands that judgment be entered against Defendant, ordering and awarding:

   i.       the sum of £ 217,000.00, and other compensatory and consequential damages;

   ii.      pre-judgment interest, attorneys' fees, and costs of suit; and

   iii.     such other and further relief as the Court deems just and proper.


### SECOND COUNT
*(Unjust Enrichment)*

41.     The averments contained in paragraphs 1 through 41 are incorporated by reference as if set forth at length herein.

42.     Plaintiff made £ 217,000.00 of milestone payments to Defendant for the benefit of Defendant, as more particularly set forth above.

43.     Substantial benefits were conferred upon the Defendants as a result of Plaintiff's milestone payments made to Defendant and there was an appreciation of those benefits by Defendant.

44.     Defendant has retained the benefits conferred upon it, and accepted said benefits, without providing the bargained for preclinical program.

45.     As a result of Defendant's wrongful actions, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff demand that judgment be entered against Defendant, ordering and awarding:

i.      compensatory and consequential damages;

ii.     pre-judgment interest and costs of suit; and

iii.    such other and further relief as the Court deems just and proper.


Respectfully submitted,


**THE LAW OFFICE OF JOHN F. ROONEY, V**

By: _____
John F. Rooney(I.D. 310289)
2401 Pennsylvania Avenue – Suite 1C41
Philadelphia, PA 19130 ; 215-704-0556
john@rooneyphillylawyer.com

## VERIFICATION

I, Charlie Bavington, Managing Director for Plaintiff GlycoMar Ltd., hereby state that I am authorized to make this verification on behalf of Plaintiff, GlycoMar Ltd. I hereby further verify that the statements made in the attached Complaint are true and correct to the best of my knowledge, information and belief. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

16 Nov 15

CHARLIE BAVINGTON
Managing Director
GlycoMar Ltd.